Marshall, C. J.
 

 This cause is filed in this court
 
 *65
 
 under the original jurisdiction of this court seeking the writ of mandamus. The petition alleges the following facts: Fred W. Atcherson, the plaintiff, is one of the county commissioners of Franklin county, Ohio. He seeks to compel the auditor of Franklin county to deliver to the treasurer of Franklin county, Ohio, a warrant in the sum of $209.90 to compensate relator for certain official services rendered by said county commissioner in the performance of duties discharged in accordance with Sections 6602-1 to 6602-33c, inclusive, General Code. Those sections relate to water and sewer improvements, and the services for which compensation is sought in this action relate to a water improvement in sewer district Mifflin No. 1 in Franklin county, known as improvement No. 110. The statute which authorizes the charges which are the subject-matter of this action is Section 6602-14, General Code, which is as follows: “In addition to the regular salary provided by law for county commissioners, each commissioner serving in a county having one or more regularly created county sewer districts, shall be paid the following amount; for time spent in connection with the establishing of any sewer district or the preliminary work preceding the awarding of any contract for either sewer or water improvements or both, or for the acquiring of sewer or water supply lines already constructed, the sum of five dollars per day for each day actually employed, but not exceeding the aggregate sum of seventy-five dollars on each or any sewer or water improvements; for each and every sewer or water improvement actually installed under this act, a sum equivalent to the following schedule of costs for all improvements or parts of improvements actu
 
 *66
 
 ally constructed during the current year ending J une 30th; for the first $200,000, one-third of one per cent; for all above $200,000, and not exceeding $400,000, one-fourth of one per cent; for all above $400,000, and not exceeding $600,000, one-sixth of one per cent; for all above $600,000, one tenth of one per cent, provided, however, that the maximum compensation received by any commissioner or sanitary engineer serving in any county affected by this measure shall not exceed the amount of compensation received during the current year by the county auditor serving in the said county. The cost of any improvement shall be determined by estimates paid to the contractor for such improvements plus the cost of all engineering, publication and other costs of such improvements, as defined in.this act, exclusive of the compensation provided in this section. The method of payment of the above shall be as follows — the sum of five dollars per day, as specified above, shall be paid by warrants issued by the county auditor upon the county treasurer upon the filing in the county auditor’s office of an itemized statement by each county commissioner for such service. For improvements actually installed, as specified above, payments shall be made by warrants issued by the county auditor upon the county treasurer upon the filing in the county auditor’s office of a bill properly authorized and certified by the county sanitary engineer, based upon monthly estimates of work constructed by any contractor or contractors regularly engaged in performing work upon any sewer or water contract or both plus the engineering and incidental costs as provided in this act exclusive of the compensation provided in this section. The funds to
 
 *67
 
 pay the above additional compensation to county commissioners shall be included in the incidental cost of each improvement, and the moneys shall be provided as already provided in this act. In the event that any improvement, either sewer or water or both, is installed upon which a per diem fee has been previously paid, deduction shall be made of the amount so paid when the bills based upon the percentage allowance are regularly presented to the county auditor by the sanitary engineer for payment.”
 

 The total cost of this particular improvement was $78,736.78, and the charges due and payable under that statute to Fred W. Atcherson, as one of the county commissioners, are alleged to be $209.90, no part of which has been paid. ■ Without repeating the allegations of the petition, it is sufficient to say that the petition alleges that all of the necessary steps have been taken relative to the improvement, and that the funds are in the treasury out of which a warrant can be honored. The issue is made by a demurrer to the petition, which seeks to put in issue the constitutionality of Section 6602-14, General Code.
 

 Its constitutionality is challenged as being in violation of the provisions of Sections 5, 6,16 and 19 of Article I of the Ohio Constitution, and Section 1 of the Fourteenth Amendment of the Federal Constitution. We are only seriously concerned with Section 16 of Article I of the Ohio Constitution and Section 1 of the Fourteenth Amendment, which contain guaranties of due process of law. The basis of the claims of the defendant is that in order to receive the fees provided by Section 6602-14 the commissioners must decide in favor of the improvement, and, further, that there is an inducement to increase rather than
 
 *68
 
 to diminish the cost of the improvement, because, in addition to the per diem for the services in determining the necessity for the improvement, the commissioners are allowed a percentage of the entire cost of installing the improvement. While the petition does not so state, it necessarily enters into our deliberations that the amount claimed in the petition is only a small part of the entire sum which will be paid to the commissioners of Franklin county if the writ in this case is awarded. During the three years last past the commissioners of Franklin county have been paid no fees or commissions in sewer improvements, because of a decision rendered by the court of common pleas of Franklin county, which declared Section 6602-14, General Code, to be unconstitutional; The fees and commissions have nevertheless been charged in all cases, and they have accumulated to the aggregate sum of approximately $8,000, and that entire sum has been included in the assessments upon property for the payment of sewer improvements during the past three years. Manifestly those fees and commissions are either due to the commissioners, or should be refunded to the property owners. In support of the demurrer to the petition counsel for the defendant cites a single authority, viz.,
 
 Tumey
 
 v.
 
 Ohio,
 
 273 U. S., 510, 47 S. Ct., 437, 441, 71 L. Ed., 749, 50 A. L. R., 1243. In that case the Supreme Court of the United States held there was a violation of due process, in that the mayor who heard and decided a misdemeanor case adjudged costs against the defendant, in which costs the mayor had a personal interest to the extent of approximately $12 by reason of not being entitled to any fees except in case of judgment against the defendant. In
 
 *69
 
 the course of the opinion it was stated that the total fees received by the mayor in similar cases amounted to about $100 per month. In some of the counties of this state there are very elaborate ditch improvements, and the fees to the county commissioners are very substantial sums. In other counties they are relatively small. In Franklin county, the experience of the past three years is that each commissioner would receive about $200 per month. It is our purpose to faithfully follow the
 
 Turney case,
 
 in so far as the principles declared in that case can be given application. The board of county commissioners is- an administrative board, but it nevertheless exercises quasi-judicial functions. The proceedings for determining the necessity for sewers, and the levy of assessments upon property according to benefits to pay for such improvements, are judicial in character. The board of commissioners exercises only those powers which are conferred upon it by legislation, and the parties who are affected by the proceedings are injured to the same extent as if the same order should be made by a regularly constituted court of justice. The net result to property owners must be the same whether accomplished through judicial or quasi-judicial authority. At page 522 of the opinion of the
 
 Turney case,
 
 it is declared by Chief Justice Taft as a general rule that officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy, and numerous cases are cited in support of that proposition. The opinion then discusses at length the degree and nature of the interest which will disqualify the judge. It was declared that one of the matters to be considered is whether or not there is some other available agency
 
 *70
 
 not affected by disqualification which might discharge the duty. The question of availability of an appeal was also considered. The conclusion was finally declared in the following language: “But it certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case.”
 

 We know of no authority, neither can we discern any principle, which would call for a different rule where only property is involved from that which would apply where the liberty of a citizen is involved. It seems very clear, therefore, inasmuch as the pecuniary interest of the county commissioners of Franklin county in sewer improvements is greater than was the interest of the mayor in determining the guilt or innocence of Tumey, that measured by that standard alone the conclusion would have to be reached that the county commissioners were disqualified.
 

 On the other hand, it must be borne in mind that the only legal principle decided by the Supreme Court of the United States in the
 
 Tumey case
 
 was that the mayor was disqualified, and the reversal of the judgment was grounded upon the fact that objection on the ground of the mayor’s disqualification was made at the first opportunity. The attack upon the judgment by Tumey was a direct attack, in an error proceeding, and it was not necessary to dedare, neither did the Supreme Court in fact declare, that the judgment was void. Immediately following the announcement of the judgment of reversal in the
 
 *71
 

 Tumey case,
 
 numerous cases were brought to this court to interpret the decision of the United States Supreme Court, and to determine whether the Supreme Court of the United States had declared the judgment in the
 
 Tumey case
 
 void or only voidable. This court, by a divided court, reached the conclusion that the judgment was only declared to be voidable, and that in other oases where the objection was not timely made, and no error prosecuted on that ground, the objection could not be made for the first time in a court of .review; nor was such judgment subject to collateral attack. Error was not prosecuted in those cases to the Supreme Court of the United States, except in a single instance where a conviction was before a mayor who was compensated by salary instead of being compensated out of costs collected as a part of the judgment of conviction. "We therefore have no expression from the Supreme Court of the United States as to whether the later decisions of this court interpreting the Tumey decision are correct. The interpretation of this court is, however, in perfect harmony with numerous other decisions which have sought to interpret the Tumey decision.
 
 Brown
 
 v.
 
 Kleysteuber,
 
 149 Va., 438, 141 S. E., 252;
 
 Commonwealth v. Dabbierio,
 
 290 Pa., 174, 138 A., 679;
 
 Bryant
 
 v.
 
 State,
 
 146 Miss., 533, 112 So., 675;
 
 Ex Parte Meeks,
 
 (D. C.), 20 F. (2d), 543;
 
 Boyd
 
 v.
 
 State,
 
 (Miss.), 114 So., 353;
 
 Fleming
 
 v.
 
 City of Greenwood,
 
 (Miss.), 115 So., 221;
 
 Owens
 
 v.
 
 Dancy,
 
 (C. C. A.), 36 F. (2d), 882;
 
 Hill
 
 v.
 
 State,
 
 174 Ark., 886, 298 S. W., 321;
 
 Uihlein
 
 v.
 
 St. Paul,
 
 (C. C. A.), 32 F. (2d), 748. In the case of
 
 Tari
 
 v.
 
 State,
 
 117 Ohio St., 481, 159 N. E., 594, 57 A. L. R., 284, this court declared that a judgment of conviction before
 
 *72
 
 a justice of the peace who was disqualified by reason of interest was nevertheless valid if no objection was made by the defendant at or before the trial, and that the failure to make the objection in the trial court should be deemed to be a waiver of the disqualification. The reasoning of the opinion in that case need not be repeated at this time. Applying the reasoning of that case, the conclusion must be reached that the judgment of the board of county commissioners determining the necessity for the improvement, and levying the assessments upon property in payment of the same, in the absence of any objection on the ground of disqualification, must be held to be a valid judgment.
 

 On the other hand, it is very plain that if any objection had been made to the board of commissioners hearing and deciding the question of the establishment of the sewer district before the decision was rendered, or even before the bonds were issued, the claim of disqualification must have been considered to be well taken. No objection having been made, the judgment becomes a valid judgment, but it does not follow that the disqualified judge should be paid his compensation in a case in which he was disqualified by interest to hear and decide. Ordinarily a judgment in court includes costs and fees. The order made by the. county commissioners in these cases makes no mention of fees. While the judgment is a valid judgment, the fees have not been included in that judgment. There is not a clear legal right to the award of the extraordinary writ of mandamus to compel their payment.
 

 The demurrer to the petition will therefore be sustained, and it being apparent that no amendment can
 
 *73
 
 be made which will obviqte the difficulties of the original petition, the writ of mandamus will be denied.
 

 Writ denied.
 

 Matthias, Day and Kinkade, JJ., concur.
 

 Jones, At,t,en and Robinson, JJ., concur in the judgment.